UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-8366-BER

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MARKELL ANTHONY COLEMAN,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

  Yes  X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

  Yes  X No

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

  Yes  X No

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY

BY: _____
    JOHN C. McMILLAN
    ASSISTANT UNITED STATES ATTORNEY
    Admin. No. A5500228
    500 S. Australian Ave., Suite 400
    West Palm Beach, FL 33401
    Office: (561) 820-8711
    John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| MARKELL ANTHONY COLEMAN, | ) Case No. 24-8366-BER |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/13/2022 and 02/02/2023__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 922(g)(1), 924(a)(8) | Felon in Possession of Firearm and Ammunition; and |
| 26 USC §§ 5861(d), 5871 | Possession of Unregistered Machinegun |

FILED BY ___TM___ D.C.

Aug 2, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

This criminal complaint is based on these facts:
Please refer to the accompanying Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Matthew Ward, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

Digitally signed by Bruce Reinhart
Date: 2024.08.02 11:53:56 -04'00'

_____
Judge's signature

City and state: __West Palm Beach, Florida__     Bruce Reinhart, United States Magistrate Judge
*Printed name and title*

### AFFIDAVIT OF
### MATTHEW WARD, TASK FORCE OFFICER
### BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
### Case No. 24-8366-BER

Your Affiant, Matthew Ward first being duly sworn, does hereby depose and state as follows:

## Introduction

1. Your Affiant is currently a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and has served in that capacity since November 2020. As a TFO your affiant has been specially deputized by the United States Marshals Service and authorized to enforce federal law, to include offenses occurring under Titles 18 and 21 of the United States Code. Your affiant is also a duly sworn Police Officer employed by the City of West Palm Beach Police Department (WPBPD) for the last ten (10) years. Some of your affiant's responsibilities as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) include investigating violations of federal law, including violations of the Gun Control Act (Title 18 United States Code, Chapter 44).

2. During my tenure as a law enforcement officer, your affiant has participated in over 100 investigations, arrests and subsequent debriefings of individuals who were arrested for possessing firearms in furtherance of violent and/or drug trafficking crimes, and possession of firearms by convicted felons. In addition, during my tenure with the West Palm Beach Police Department, I have arrested individuals for various drug violations, and have spoken with and interviewed in excess of 100 drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. I have also participated in the interviews of at least 100 persons who were involved in possession or distribution of controlled substances. I have served as the affiant on at least 25 prior search warrants seeking judicial authorization to search cellular phones for

evidence relating to drug dealing and/or prohibited persons in possess of firearms. I have participated as a surveillance agent and assisted in monitoring calls in three separate wiretaps, which involves listening to drug dealing related phone calls, and surveilling the conspirators involved in drug trafficking organizations. I have also participated in at least 100 prior legally authorized searches involving drug dealers and/or persons prohibited to possess firearms. I have also conducted over 50 investigations involving the identification of co-conspirators, and customers of drug dealers, and felons in possession of firearms, through the use of telephone records and bills, financial records, text messages, digital photographs stored within seized cellular phone devices, drug ledgers, photographs, and other documents. As a result of the foregoing, your affiant has become extremely familiar with ways, manners, and means, to include common terminology and coded language, employed by both drug traffickers, and prohibited possessors of firearms (such as convicted felons and drug dealers) to conduct their illegal activities in the South Florida area, and in particular in the West Palm Beach area of Palm Beach County, Florida.

3. This Affidavit is submitted in support of a criminal complaint, charging Markell Anthony (COLEMAN) with the following violations of federal law:

a.) Felon in possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); and

b.) Possession of a Machine Gun Not Registered in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871, in violation of Title 26, United States Code, Section 5845.

2

4. The facts and circumstances contained herein are based on my personal knowledge, as well as information received from other law enforcement officers and reliable non-law enforcement sources, with personal knowledge of the events described herein. This Affidavit is provided for the limited purpose of establishing probable cause in support of the criminal complaint and therefore does not contain all the facts known to me about this investigation.

5. On the basis of my training and experience, your affiant is aware that Title 26, United States Code, Section 5845(b) defines a "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, <u>any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

6. Title 26, United States Code, Section 5845(a)(6), in turn, classifies "machinegun[s]" as "firearms" for purposes of the National Firearms Act (NFA), and accordingly, requires that lawfully possessed machineguns be identified by a serial number, together with the payment of a tax, background check, and registration in the National Firearms Registration and Transfer Record (NFRTR), as required under Title 26, United States Code, Section 5861.

## Probable Cause

7. On December 13, 2022, the West Palm Beach Police Department received a ShotSpotter Alert with the following details: GUNFIRE: 9 Rounds at 1031 N Tamarind Ave, West Palm Beach, Florida; December 13th 2022 13:11:29; Respond ID 754-256507; Dot (26.7226887577201, -80.0618035434989). Members of the West Palm Beach Police Department responded to the activation and located two victims suffering from gunshot wounds. A Detective assigned to the Strategic Intelligence Center was monitoring a city camera system and observed a

3

male wearing a red hoodie exiting a silver Honda Accord, bearing Florida Tag Y030KS holding a firearm in his right hand shortly after the shooting occurred. Believing the subject in the red hoodie may have participated in the shooting, Sergeant Preusz located and detained the male observed by Detectives wearing a red hoodie, who was identified as M.P., in the immediate area of the crime scene. M.P. was subsequently arrested for State charges of Resisting without violence and possession of Marijuana with Intent to Sell. With M.P. at the time of his apprehension were several individuals, to include defendant Markell COLEMAN, C.L., Z.R. and T.S.

8. During a thorough review of the City of West Palm Beach's surveillance cameras located at 10th Street and North Tamarind Avenue, at 12:37 p.m., your Affiant and ATF Task Force Officer Fuchsman observed a silver Honda Accord, bearing Florida Tag Y030KS parked in 1000 block of N. Tamarind Avenue on the west side of the road, facing south. M.P. was observed exiting the driver's seat of this vehicle. M.P. then walked away leaving the vehicle parked before the shooting occurs. During this time no other persons approached or entered the parked vehicle. Immediately after the shooting, at approximately 1:13 p.m., M.P. and COLEMAN could be observed running to the silver Honda Accord, bearing Florida Tag Y030KS, as which time M.P. opened the driver's side door, entered the driver's side compartment, and retrieved a handgun from the vehicle with his right hand. COLEMAN, in turn, was observed opening the front passenger door of the vehicle, leaning in, and retrieving a black handgun from inside the vehicle. COLEMAN then placed the firearm inside his front sweatshirt pocket and both he and M.P. ran southwest between the stores located at 1031 N Tamarind and 1029 N Tamarind Avenue, West Palm Beach, Florida.

9. COLEMAN and M.P. were last observed walking toward the northwest corner of 1029 North Tamarind Avenue where it should be noted officers later located an open door to the

4

abandoned building/store front at that location. At approximately 1:13 p.m. both COLEMAN and M.P. emerge from the northwest corner of 1029 North Tamarind Avenue and begin walking southwest through the open field located directly behind the building.

10. At approximately 1:13 p.m., C.L. is observed walking northbound in the west alleyway behind 1031 North Tamarind Avenue towards 10th Street. Upon WPBPD Officers arriving on scene, C.L. changes direction to walk southbound in front of 1031 North Tamarind Avenue towards 1029. At approximately 1:14 p.m., C.L. is observed emerging out of northwest corner of 1029 North Tamarind Avenue jumping up and over an unknown object and walking southwest through the open field located directly behind the building. It should be noted an ATV was parked in front of the rear open door of 1029 North Tamarind Avenue causing those exiting the building to have to walk around the vehicle or jump over it. At approximately 1:14 p.m. COLEMAN, C.L. and M.P. gather in the open field for a brief moment and then proceed to walk in different directions. At approximately 1:14:55 p.m., M.P. was detained by Sergeant Preusz at which time no firearm was located on Posey's possession.

11. During the WPBPD search of the alleyway located between 1031 N Tamarind Ave and 1029 N Tamarind Ave a fresh cardboard box containing ammunition was discovered as if it had been recently thrown in the area. There were no signs of weathering or aging as if it was sitting outside for a long period of time. While continuing the search with Canine, Detective Moroto and Canine Office Barr observed the back door of 1029 North Tamarind Avenue was ajar and appeared as if someone had possibly run into the building. Detective Moroto knows from his experience proactively patrolling the area as part of his assignment in the Gang and Habitual Offender Suppression Team, that 1029 North Tamarind Avenue is an abandoned building/store front that is commonly used by drug users and dealers to use, and store illegal controlled substances for sale.

Just outside the door to this building/store front is where the above stated box of ammunition was located. It should be noted that the door to the abandoned building/store front had no handle to secure the door. Because of this and the fear that other victims, suspects, of possible evidence of the crime was located inside Detective Moroto and Canine Officer Barr continued their cursory search of 1029 N Tamarind Avenue.

12. Upon entry into the abandoned building through the above stated door on the northwest side, Canine drug detection dog Narco immediately alerted to a filing cabinet that was within a few feet from the door. On top of the cabinet Detective Moroto observed a digital scale with a white powdery reside that he believed to be powder cocaine. In the partly opened doors of the filing cabinet Detective Moroto observed large plastic baggies containing a green leafy substance that he knows from his training and experience, and the substances appearance and smell, to be Marijuana.

13. Upon continuing the search east bound through the building Detective Moroto observed a small table and chairs in the main area of the space. On top of the table were two red plastic cups, a Coca-Cola bottle, and a small bottle of liquor, commonly referred to as a "miniature." It should be noted that the red plastic cups had condensation around the outside of them and were still cool to the touch as if someone had left them in there in a hurry.

14. As Detective Moroto and Canine Officer Barr continued to search south and then west through the building Detective Moroto observed a partially opened closet door. Inside the closet on top of a wooden shelf were a total of five (5) semi-automatic handguns. At that time Detective Moroto and Canine Officer Barr completed the search for possible suspects or victims and exited the building to secure it. Detective Moroto stated the firearms were placed in a manner to which he believed an individual intended to hide or dispose of evidence related to the shooting.

It should also be noted that the building/store front was abandoned and had no way to properly secure the illegal drugs and handguns, in the interests of public safety.

15. On the basis of his observations and in an abundance of caution, Detective Moroto applied for a search warrant for the premises. Warrant number: WPB_2022_000763 was signed by Honorable Judge Lauren Burke. The below listed items were recovered from within the abandoned building:

   a.) Narcotics Paraphernalia

   b.) A net quantity of 392.6 grams of marijuana

   c.) Polymer 80 9mm semi-automatic handgun (no serial number).

   d.) Heckler & Koch USP.40 semi-automatic handgun (serial number 26068409). Two (2) rounds of RP 40 S&W ammunition, Two (2) rounds of Tulammo 40 S&W ammunition, and five (5) rounds of WIN 40 S&W ammunition.

   e.) Glock 19 Gen5 9mm semi-automatic handgun (SN#BPXB921)

   f.) Glock 17 Gen4 9mm semi-automatic handgun (SN#BERS258) with extended magazine. Stolen Boynton Beach Police Department issued firearm. Fourteen (14) rounds of Speer 9mm ammunition, four (4) rounds of FC 9 mm ammunition, three (3) rounds of Blazer 9 mm ammunition, three (3) rounds of PMC 9 mm ammunition, one (1) round of FC 9mm ammunition, one (1) round of WMA +P+ 9mm ammunition, and one (1) round of CBC 9mm ammunition.

   g.) Glock 17 9mm semi-automatic handgun (SN#BUXN762)- Registered to M.P.

16. Thereafter, your affiant applied for and received lawful state DNA search warrants for M.P. and Markell COLEMAN, since, among other reasons, they had both been observed arming themselves with pistols after exiting their vehicle on the above-described video, traveling to the area of the abandoned building/store front, after which M.P. was not found in possession of

a firearm, suggesting such has been hidden somewhere, such as among the firearms recovered in the abandoned building/store front.

17. On February 2, 2023, WPBPD Tactical Unit Detectives Bryan Vautin and Robert Hatcher located and took COLEMAN into custody in accordance with the court's order stating that law enforcement was "authorized to seize the person of the said MARKELL COLEMAN if he/she is not in custody, and transport him/her to West Palm Beach Police Department. 600 Banyan Blvd, West Palm Beach, FL 33401, for the purpose of executing this search warrant." Accordingly, COLEMAN was transported to the West Palm Beach Police Department for the collection of his DNA. Upon Detective Vautin searching COLEMAN's person per written WPBPD policy prior to transport, he located two (2) cellular phones and a black, triangularly shaped metal device, which Detective Vautin believed to be consistent in appearance with a machinegun conversion device intended to modify semi-automatic firearms to fire fully automatically, based on his knowledge obtained from recent training briefs and intelligence bulletins concerning an influx of illicitly manufactured parts for that purpose.

18. Upon obtaining DNA samples for COLEMAN and M.P. the samples and swabs obtained from the firearms were sent to Palm Beach County Sheriff's Office Forensic Sciences and Technology Facility ("PBSO Laboratory") for comparison. The black metal triangularly shaped object believed to be a machine gun conversion device was sent to the ATF Firearm & Ammunition Technology Division for examination.

19. The PBSO Laboratory DNA forensic analysis report for the DNA obtained from swabs of the firearms, and the known DNA "standard" samples obtained from COLMAN and M.P. stated the following:

8

- Submission 1A: SWABS OF GRIP FROM S&W HECKLER AND KOCH .40 PISTOL.

A.  First Proposition: The DNA profile obtained is approximately 3E7 times more likely (very strong support) if it originated from M.P. and two unknown, unrelated individuals than if the DNA profile obtained originated from three unknown, unrelated individuals.

B.  Second Proposition: The DNA profile obtained is approximately 1E28 times more likely (very strong support) if it originated from Markell Coleman and two unknown, unrelated individuals than if the DNA profile obtained originated from three unknown, unrelated individuals.

- SUBMISSION 2A: SWABS OF GRIP FROM GLOCK 17 GEN4 PISTOL

A.  Proposition: The DNA profile obtained is approximately 1,232 times more likely (moderate support) if it originated from Markell Coleman and three unknown, unrelated individuals than if the DNA profile obtained originated from four unknown, unrelated individuals.

20.  Records obtained by your affiant from the Palm Beach County Circuit Court (PBCCC) establish that at all times material hereto, that is, prior to December 13, 2022, that Markell COLEMAN was a convicted felon, having been adjudicated guilty on or about September 9, 2020, of the offense of Sale of Marijuana, in the Fifteenth Judicial Circuit in PBCCC Case No. 2020CF00495AXXXMB. Upon completion of his "18 month" sentence of imprisonment COLEMAN registered with the Palm Beach County Sheriff's Office as a convicted felon on November 20, 2021, in compliance with Florida state law, thereby demonstrating his actual knowledge of his status as a convicted felon. COLEMAN was entered into FCIC as a Florida Known Gang Member, dated April 27, 2015.

21.  In May 2024, your affiant received the technical examination report from ATF's Firearm & Ammunition Technology Division stating "Exhibit 138" discovered on COLEMAN's

person at the time the DNA warrant was served on February 2, 2023, which determined said device to be an AR15-type machinegun conversion device was a part designed and intended solely and exclusively, for use in converting a weapon into a machinegun; therefore, Exhibit 138 is a "machinegun." Being a machinegun, Exhibit 138 is also a "firearm" pursuant to Title 26, United States Code, Section 5845(a)(6) and 5845(b) Exhibit 138 bears no NFA manufacture's markings of identification of serial number as required.

22. Your Affiant was granted state search warrants for two phones obtained from COLEMAN the day the DNA warrant was executed. Upon execution of the search warrants located in the Red/Pink iPhone: IMEI: 356114097702442 were numerous images and videos of COLEMAN. One image depicted an open palm of a hand holding the black metal triangularly shaped object (machinegun conversion device) consistent with the item recovered from his person that was determined by the Firearm & Ammunition Technology Division to be a machine gun (Exhibit 138). That image was examined by West Palm Beach Police Department Senior Latent Print Examiner Grillo comparing fingerprints observed in the photograph to Markell COLEMAN. The digital photograph image of the left hand was positively identified through latent examination as COLEMAN.

23. Additionally, your affiant discovered numerous text message conversations related to the sale of the machine gun conversion device, a representative sample of which follows:

a.) Conversation on 2/1/2023 between COLEMAN, (561) 480-7246, and "TJ" at number (561) 598-1844 where COLEMAN sends "TJ" the image of the machine gun conversion device and states "250." "TJ" responds by asking "Wats that." COLEMAN then replies, "a fully piece."

b.) Conversation between COLEMAN, (561) 480-7246, and the number (561) 719-4293. On 1/20/2023 COLEMAN states "Yo dis Markell." Then on 2/1/2023 COLEMAN sends a message "You want a fully piece" along with the image of the machine gun conversion device. (561) 719-4293 replies by asking "How much, that for chop?" COLEMAN replies by saying, "Ya, 300, Let me know what up ight."

c.) On 2/1/2023 COLEMAN, (561) 480-7246, sends the image of the machine gun conversion device to the number (786) 971-8886. The individual using number (786) 971-8886 replies "Disliked an image" and COLEMAN replies by saying "For the chop fam."

d.) On 2/1/2023 COLEMAN, (561) 480-7246, sends the image of the machine gun conversion device and the number "300" to the number (561) 889-2703. The user of number (561) 889-2703 ask "Who this" and COLEMAN replies "Markell."

24. Throughout the aforementioned conversations, COLEMAN refers to the machine gun conversion device that he is in possession of as a "fully piece." Your Affiant knows from his training and experience, and the context of the communications, that COLEMAN is referring to the machinegun conversation device, turning a semi-automatic firearm into a fully automatic machine gun. Also, during these conversations COLEMAN is sending the individuals different numbers that are prices for the machinegun conversion device in an attempt to sell it. There is slang terminology used throughout the conversations of "Chop." Your Affiant knows through my training and experience that the slang terminology of "chop" is an abbreviation for "choppa" (derived from "chopper" which is 1930s gangster terminology used for a submachinegun) which is typically used in the present era to refer to a high-capacity military style rifle such as an AK-47 or AR-15 variant rifle. Within the images of the cellphone extraction there are multiple photographs of Markell COLEMAN. There are also photographs of a green leafy substance that

11

appears to be marijuana and an unknown make and model silver revolver style firearm with a black grip.

25. Special Agent (SA) Kyle Belga of the Bureau of Alcohol, Tobacco Firearms, and Explosives (ATF), who has been certified by ATF as an expert in the interstate commerce nexus of firearms and ammunition, viewed the firearms and ammunition and advised that Heckler and Koch and Glock Model 17 Gen4 semi-automatic pistols, and all the listed ammunition that were contained within the aforementioned firearms/magazines were manufactured outside the state of Florida, and by their subsequent recovery in the State of Florida, necessarily traveled in and affected interstate and/or foreign commerce.

## Conclusion

Based on the foregoing facts, your affiant respectfully submits that there exists probable cause to believe that Markell Anthony COLEMAN committed the following offenses: a.) Felon in possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); and b.)Possession of a Machine Gun Not Registered in the National Firearms

Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871, in violation of Title 26, United States Code, Section 5845.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Matthew Ward
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms
& Explosives

SWORN AND ATTESTED TO ME BY
APPLICANT VIA TELEPHONE (FACETIME)
PURSUANT TO FED. R. CRIM. P. 4(d) AND 4.1
THIS _____ DAY OF AUGUST, 2024

Digitally signed by
Bruce Reinhart
Date: 2024.08.02
11:54:40 -04'00'

**BRUCE REINHART**
**UNITED STATES MAGISTRATE JUDGE**

13

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** Markell Anthony COLEMAN

**Case No:** 24-8366-BER

**Count #: 1**
**Possession of a Firearm and Ammunition by a Convicted Felon**
**Title 18, United States Code, Sections 922(g)(1), 924(a)(8)**

* **Max. Term of Imprisonment:** Fifteen (15) years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences:** Removal (deportation) upon conviction if defendant is a non-U.S. citizen

**Count # 2**
**Title 26, United States Code, Sections 5861(d) and 5871**
**Unlawful Possession of an Unregistered Machinegun**

* **Max. Term of Imprisonment:** Ten (10) years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences:** Removal (deportation) upon conviction if defendant is a non-U.S. citizen